Peter E. Martin, SBN 121672
peter@martinmacklaw.com
Shelley K. Mack, SBN 209596
shelley@martinmacklaw.com
**Martin & Mack LLP**
1369 G Street
Arcata, California 95521
Tel: (707) 268-0445
Fax: (707) 667-0318

Attorneys for Plaintiffs
OSCAR LEATHERMAN and
KELLY PIFFERINI

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSCAR LEATHERMAN and KELLY PIFFERINI,<br><br>   Plaintiffs,<br><br>vs.<br><br>CITY OF EUREKA, EUREKA POLICE DEPARTMENT, and STEVE WATSON, in his official capacity as Interim Chief of Police,<br><br>   Defendants.<br>_____ ) | CASE NO.  3:17-cv-5610<br><br>**FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL AND CONSTITUTIONAL RIGHTS**<br><br><br>**DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

1.      On March 15, 2016, the City Council for the City of Eureka adopted Eureka City Ordinance No. 907-C.S., codified as Eureka Municipal Code ("EMC") Section 130.06 (the "Ordinance"), purporting to prohibit "aggressive and intrusive solicitation" throughout the City of Eureka.  The Ordinance also prohibits all solicitation in specified areas throughout the City of Eureka, including but not limited to on median strips; within 35 feet of driveways accessing shopping centers, retail, and business establishments; within 50 feet of public transportation vehicles and stops; and to any motor vehicle located within 200 feet of any intersection.  On its face, the Ordinance broadly and over-inclusively prohibits the expression of First Amendment rights in violation of the United States Constitution.

**JURISDICTION & VENUE**

2.      This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 because they arise under the United States Constitution.  This Court also has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1343(a)(3) because they are brought to address deprivations, under color of state authority, of rights, privileges, and immunities secured by the United States Constitution.  Plaintiffs also seek relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202.

3.      This Court has personal jurisdiction over Defendant City of Eureka because it is a political subdivision of the State of California located in Humboldt County.  The Court has personal jurisdiction over Defendants Eureka Police Department and Interim Police Chief Steve Watson because they operate and/or reside in Humboldt County and enforce the City of Eureka's laws.

4.      Venue is proper in the United States District Court for the Northern District of California under 28 U.S.C. § 1391(b).  Defendants are located in the Northern District of California, and the acts and/or omissions complained of herein occurred or will occur in this District.

**PARTIES**

5.      At all times relevant to this Complaint, Plaintiff Oscar Leatherman ("Mr. Leatherman") is and was a homeless individual residing in the State of California, County of Humboldt.

6.      At all times relevant to this Complaint, Plaintiff Kelly Pifferini ("Mr. Pifferini") is and was a homeless individual residing in the State of California, County of Humboldt.

7.      Defendant City of Eureka ("City") is a "public entity" within the definition of California Government Code Section 811.2.  Public entities in the State of California are subject to suit, pursuant to California Government Code Section 945.  The City, through the Eureka City Council, is responsible for enacting the Ordinance.  The City is also the legal and political governmental entity responsible for the actions of the Eureka Police Department and its officials, agents, and employees.  Defendant City of Eureka is sued in its own right and on the basis of the acts of its officials, agents, and employees, including the EPD.

8.      Defendant Eureka Police Department ("EPD") is the municipal agency responsible for policing the City and for enforcement of the EMC, including Sections 130.06 and 10.99.  The EPD, through its officials, agents, and employees, began enforcing the amended Ordinance within the City of Eureka beginning on April 14, 2016.

9.      Defendant Steve Watson ("Watson") has been the EPD's Interim Chief of Police since July 2017.  In his official capacity as Interim Chief of Police, Interim Chief Watson directs the EPD's administration and operation pursuant to the Code and guidelines set by the City.  As such, he is responsible for the enforcement of EMC Sections 130.06 and 10.99.  Under Interim Chief Watson's direction, EPD officials, agents, and employees have detained, cited, and issued citations to Plaintiffs for violation of the Ordinance pursuant to EMC Sections 130.06 and/or 10.99.  Interim Chief Watson is being sued in his official capacity.

10.      Each of the acts complained of was undertaken and each violation of Plaintiffs' rights occurred pursuant to the unlawful policies, practices, and customs of Defendants.

11.      In connection with the acts complained of herein, each Defendant was acting on behalf of the City of Eureka or at the direction of another Defendant on the City's behalf.

12.      The acts of each Defendant were authorized, ratified, and/or condoned by the relevant policy makers for Defendants City of Eureka and/or the EPD.

13.      Each of the violations of law complained of herein were intentionally committed by Defendants, their officials, agents, and employees, acting under color of law.

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL AND CONSTITUTIONAL RIGHTS

OSCAR LEATHERMAN *et al.* v. CITY OF EUREKA *et al.*

**FACTUAL ALLEGATIONS**

14.     The City's Ordinance prohibiting aggressive solicitation was first adopted by the Eureka City Council in 1994.

15.     In 2012, along with its adoption of an ordinance prohibiting sitting or lying on public sidewalks within the City, the Eureka City Council unanimously voted to amend the Ordinance to expand its scope and application.  According to a report to the Eureka City Council from a City staffer, the original Ordinance passed in 1994 was "insufficient to protect the community from [aggressive panhandling]."  The Eureka City Council's 2012 amendment to the Ordinance expanded its coverage to prohibit solicitation that included following pedestrians, using abusive language, and blocking pedestrian or vehicular traffic.

16.     On January 9, 2015, an anonymous individual sent an email to all five members of the Eureka City Council, along with Eureka Mayor Frank Jager and City Clerk Pam Powell. The unsigned message, sent from the email address citizeneureka@gmail.com, urged the City Council to "draft[] an ordinance to limit panhandling within the City of Eureka City Limits." The anonymous email message stated further that "Eureka Citizens need the City Council to show that the council is concerned for general public safety!  Especially, since the council is exploring ways to spend additional funds, directly on homeless issues, like housing, from the funds provided, in part, from citizen taxes. . . . Citizens, and businesses, are asking why City Council appears more concerned about providing for the homeless, rather than protecting citizens' person, and business, safety."  In a follow-up email sent to the *Lost Coast Outpost* newspaper the same day, the anonymous emailer represented that the anti-panhandling proposal suggested to the City was "the result of a group discussion, involving over 45 Eureka citizens. We will soon make a formal request to the city council."

17.     In the City's January e-newsletter, Eureka City Manager Greg Sparks urged readers not to give money to panhandlers in Eureka, stating that "We have all seen the signs that read, 'Homeless, Hungry, Anything Will Help, God Bless.' . . . However, there are a number of free dining facilities in Eureka. . . . The City of Eureka and Humboldt County have been part of an effort to educate the public that dollars given to panhandlers would be more effective going to

the three free dining providers."  Mr. Sparks pointed to studies that he claimed found that the "vast majority" of money given to panhandlers is spent on drugs and alcohol.

18.     On the regular meeting of the Eureka City Council on March 1, 2016, the City Council considered, received public comment on, and ultimately voted to proceed to a vote on a new amendment to the Ordinance.  Eureka City Attorney Cyndy Day-Wilson, in her report and recommendations to the City Council on the proposed amendment to the Ordinance, explained that the 2012 amendment to the Ordinance "did not include a prohibition [on solicitation] with regard to motor vehicles; parking lots; pedestrian footbridges; entrance to a supermarket, retail store, restaurant or bar; or an intersection. . . ."  Based on her analysis of legal challenges to aggressive solicitation laws in other jurisdictions, Ms. Day-Wilson recommended that the City Council adopt the proposed amendment to Eureka's existing Ordinance "in order to address ongoing issues regarding the safety and welfare of the public."   The amendment proposed to expand the scope of the City's existing anti-solicitation Ordinance to prohibit solicitation of any kind while standing on a roadway median strip; from anyone inside a car within 200 feet of an intersection with a traffic signal, stop sign, or yield sign; from anyone in a car within 35 feet of a driveway to any business establishment or shopping center; from the driver or passengers of any car stopped at a gas station; from anyone riding the bus; and within 50 feet of any "posted public transportation vehicle stop."

19.     At the March 1, 2016 Eureka City Council meeting, Ms. Day-Wilson delivered a verbal report to the City Council, stating that the City had received numerous complaints regarding panhandling, which prompted the proposed amendment to expand the scope of the existing anti-solicitation ordinance.  Ms. Day-Wilson told the City Council that violations of the amended Ordinance would be charged as misdemeanors that could be reduced to infractions at the City Attorney's discretion.  Ms. Day-Wilson's report was followed by a verbal report to the City Council from then-Eureka Police Chief Andrew Mills, who stated that panhandling was a significant complaint from citizens at every community meeting.  Then-Chief Mills stated further that if the proposed amendment to the Ordinance was approved, the EPD would notify

panhandlers within the City of Eureka that the amended Ordinance had passed and would soon be enforced.

20.     During public comment on the proposed amendment to the Ordinance at the March 1, 2016 Eureka City Council meeting, eleven persons spoke to the proposed amendment – nine against the proposal, and two in favor.  Individuals who spoke against adoption of the proposed amendment to the Ordinance expressed concerns that there was insufficient justification for expanding the Ordinance's existing scope, that anti-panhandling ordinances were being struck down as unconstitutional by courts across the country, that the definition of "aggressive and intrusive" was too subjective and open to interpretation, and that it was targeting people with no ability to pay citations.  Others who spoke against the proposed amendment to the Ordinance expressed concerns that it was designed to target the City's sizeable homeless population, that the Ordinance would be unequally and discriminatorily enforced against the homeless and the poor, that no data existed to support the City's claims that the existing Ordinance was insufficient to deal with legitimate problems surrounding panhandling, and that the expanded Ordinance would unconstitutionally interfere with free speech.

21.     Two people spoke in support of the proposed amendment to the Ordinance at the March 1, 2016 Eureka City Council Meeting: Ray Marklin, the manager of Eureka Natural Foods, who complained about panhandlers soliciting donations near his place of business, and Eureka resident Minnie Wolfe, who complained about being approached by "aggressive panhandlers" outside Eureka Natural Foods and said she reported such encounters to store management "every single time."  In response to these comments, one opponent of the proposed amendment stated that he shopped regularly at Eureka Natural Foods, was not offended by the panhandlers there, and did not perceive their behavior as "aggressive."

22.     After hearing public comment on the proposed amendment to the Ordinance, members of the Eureka City Council made their own public statements about the proposal. Councilmember Marian Brady spoke first, pointing out that the provisions relating to "aggressive and intrusive" solicitation were only part of the proposed amended Ordinance, and stating that the amendment would also prohibit all solicitation of any kind in certain locations within the

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL AND CONSTITUTIONAL RIGHTS

OSCAR LEATHERMAN *et al.* v. CITY OF EUREKA *et al.*

City.  Responding to concerns that the amended Ordinance would go so far as to bar Girl Scouts from selling cookies in front of local business establishments, Councilmember Brady said that Girl Scout cookies could still be sold because the amended Ordinance contained an exemption for commercial solicitations conducted or authorized by business owners.  Councilmember Brady explained that "if Eureka Natural Foods wants to have the Girl Scout cookie sales in front of their store, pretty much, they can do that. . . that, that is, that's OK.  'Cause they are authorizing it.  If Pearson's wants to have it in front of their store, which they often do, it's authorized."  Councilmember Brady stated further that "the store owners and all that, McDonald's is hugely affected by the fact that people can stand there at their driveway or they can sit and camp out in front of the Mexican restaurant there all day long, trying to panhandle when people come up to the stop signs."

23.     Eureka City Councilmember Melinda Ciarabellini spoke next to the proposed amended Ordinance, opening her remarks by saying "[w]ell, we heard from a lot of people who are in support of panhandling, and its sort of unfortunate that there aren't more business people out here, but I can tell you right now that every business person that has contacted me is frustrated and fed up with this."

24.     In her comments on the proposed amended Ordinance, Eureka City Councilmember Kim Bergel said bluntly that "I really feel that panhandling is predatory . . . because it preys on the goodness of people."  Councilmember Bergel complained that while panhandlers were holding signs saying they were hungry, there were free meals available at several locations in the City.  "When you give money, it feels great," Councilmember Bergel continued, "but you're exacerbating the problem.  You're exacerbating it.  And so, you know, give your money to a resource that's actually gonna do some service, some good."  After again citing free showers, free meals, and other services allegedly available in the City of Eureka, Councilmember Bergel concluded by saying "[t]here are people out there that panhandle that really do panhandle because they need the money.  There are those people.  But so, so many more of them, that I've talked to, that is just not the case.  And if it is the case that they do need money, we get them connected with services."

25.     At the conclusion of the public comment session and comments from City Council members, all of whom expressed their support for the proposed amendment to the Ordinance, the Eureka City Council voted unanimously to move forward with the second reading and a vote on adoption of the proposed amendment to the Ordinance at the Eureka City Council's next regular meeting scheduled for March 15, 2016.  Throughout the duration of the City of Eureka staff reports, public comments and City Council member comments on the proposed amended Ordinance, no category of persons subject to the scope of the amended Ordinance was mentioned or discussed other than panhandlers.

26.     On March 15, in an article by Ryan Burns entitled "<u>Attorney Threatens Lawsuit Over Eureka's Anti-Panhandling Ordinance Amendment</u>," the *Lost Coast Outpost* newspaper reported that the proposed amendment to the Ordinance would "effectively outlaw panhandling in the City's most popular begging spots, including the driveways at Costco and the hillside perch where West Henderson descends to Broadway."

27.     At the March 15, 2016 regular meeting of the Eureka City Council, the City Council again took up the proposed amendment to the City's anti-solicitation Ordinance.  Eureka City Attorney Cyndy Day-Wilson advised the City Council that no changes to the proposed amendment had been made from the original version considered at the March 1, 2016 City Council meeting.  No staff questions or public comments directed to the proposed amended Ordinance were made.  After brief discussion by City Council members, the Eureka City Council voted unanimously to adopt the proposed amended Ordinance, Eureka City Ordinance No. 907-C.S., codified as EMC Section 130.06.  The Ordinance took effect in full force on April 14, 2016.  A true and correct copy of the Ordinance is attached hereto as **Exhibit A**, and the text of the Ordinance is expressly incorporated herein.

28.     As amended on March 15, 2016, the Ordinance was retitled "Aggressive and Intrusive Solicitation," and included a new subsection (A) entitled "Findings" expressing the City's "purpose and intent" in adopting the amended Ordinance.  Specifically, new subsection (A) of the Ordinance states that the Eureka "City Council finds that there has been an increase in aggressive solicitation throughout the City of Eureka and that such behavior has become

disturbing and disruptive to residents and businesses.  It has also contributed to the loss of access to and enjoyment of places open to the public and has created an enhanced sense of fear, intimidation and disorder."  EMC § 130.06(A)(2).

29.    New subsection (A) of the Ordinance states further that "[t]he City Council finds that solicitation from people in places where they are a 'captive audience' in which it is impossible or difficult for them to exercise their own right to decline to listen to or to avoid solicitation from others, is problematic and presents a risk to the health, safety and welfare of the public.  Such places include public transportation vehicles and their designated locations for stops, as well as gasoline stations."  EMC § 130.06(A)(3).  Although the same concerns about forcing a "captive audience" to listen to unwanted speech also apply, for example, when commercial solicitors whose presence is authorized by a business owner solicit to a "captive audience," or when individuals display political campaign or protest signs in front of a "captive audience," the Ordinance does not apply to them or restrict their activities.

30.    New subsection (A) of the Ordinance states further that "[t]he City Council finds that solicitation on roadway median strips, at traffic intersections, and in the public roadway is unsafe and hazardous for solicitors, drivers, pedestrians and the general public.  Soliciting on roadway median strips, at traffic intersections, and in the public roadway increases the risk of drivers becoming distracted from their primary duty to watch traffic which may result in automobile accidents, congestion and blockage of streets, delay and obstruction of the free flow of travel, all of which constitute substantial traffic safety problems."  EMC § 130.06(A)(4).  Although the same concerns about safety hazards and traffic obstruction caused by persons standing on roadway median strips, at traffic intersections, and in the public roadway also apply, for example, when commercial solicitors whose presence is authorized by a business owner are present in such locations, or when individuals display political campaign or protest signs in those same locations, the Ordinance does not apply to them or restrict their activities.

31.    New subsection (A) of the Ordinance states further that "[t]he City Council finds that the practice of solicitation near driveways accessing shopping centers, retail, and business establishments is unsafe and hazardous for solicitors, drivers, pedestrians and the general public.

The location of the solicitor near the driveway compromises the solicitor's safety, impedes visibility, and impairs a driver's ability to safely enter and exit.  Drivers also become distracted which may result in automobile accidents, congestion and blockage of streets, delay and obstruction of the free flow of travel, all of which constitute substantial traffic safety problems." EMC § 130.06(A)(5).  Although the same concerns about safety hazards and traffic obstruction caused by persons standing near driveways accessing shopping centers, retail, and business establishments also apply, for example, when commercial solicitors whose presence is authorized by a business owner are present in such locations, or when individuals display political campaign or protest signs in those same locations, the Ordinance does not apply to them or restrict their activities.

32.     New subsection (A) of the amended Ordinance concludes by stating that the "goal of this law is to protect citizens from the fear and intimidation accompanying certain kinds of solicitation that have become an unwelcome presence in the City of Eureka."  EMC § 130.06(A)(6).

33.     Subsection (B) of the amended Ordinance provides that the term "solicit" means "to ask, beg, request, and/or panhandle using the spoken, written, or printed word, or bodily gestures, signs or other means with the purpose of obtaining an immediate donation of money or other thing of value or soliciting the sale of goods or services."

34.     Subsection (B) of the amended Ordinance provides that the term "donation" means "a gift of money or other item of value."

35.     Subsection (C) of the amended Ordinance, entitled "Aggressive solicitation prohibited," provides that "[n]o person shall solicit in an intrusive or aggressive manner in any public place."  EMC § 130.06(C).  The amended Ordinance defines "aggressive manner" in subsection (B).  Plaintiff does not challenge subsection (C) of the amended Ordinance.

36.     The Ordinance also prohibits all forms of solicitation, not just "intrusive or aggressive solicitation," in a variety of other locations throughout the City.   Specifically, subsection (D) of the Ordinance prohibits solicitation of any kind at the following locations:

---

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL AND CONSTITUTIONAL RIGHTS

OSCAR LEATHERMAN *et al.* v. CITY OF EUREKA *et al.*

(1)  *Banks and ATMs.*  No person shall solicit within 15 feet of any entrance or exit of any bank, savings and loan association, credit union, or check cashing business during its business hours or within 15 feet of any automated teller machine during the time it is available for customers' use.  Provided, however, that when an automated teller machine is located within an automated teller machine facility, such distance shall be measured from the entrance or exit of the automated teller machine facility.  Provided further that no person shall solicit, ask or beg within an automated teller machine facility where a reasonable person would or should know that he or she does not have the permission to do so from the owner or other person lawfully in possession of such facility.  Nothing in this division shall be construed to prohibit the lawful vending of goods and services within such areas.

(a)  *Exemptions.*  The provisions of division (C)(1) shall not apply to any unenclosed automated teller machine located within any building, structure or space whose primary purpose or function is unrelated to banking activities, including but not limited to supermarkets, airports and school buildings, provided that such automated teller machine shall be available for use only during the regular hours of operation of the building, structure or space in which such machine is located.

(2)  *Motor vehicles.* No person shall solicit from an operator or occupant traveling in a motor vehicle while such vehicle is located within two hundred (200) feet of any intersection in which at least one corner is controlled by an official traffic signal of the type set forth in California Vehicle Code Section 21450 or by any sign regulating the flow of traffic, such as a stop sign or yield sign.

(3)  *Median strips.* No person shall solicit on a median strip or in any manner or location that is inconsistent with the provisions of the California Vehicle Code.

(4) *Driveways accessing shopping centers, retail, and business establishments.* No person shall solicit from an operator or occupant traveling in a motor vehicle while such vehicle is located within 35 feet of a driveway providing vehicular access to a shopping center, retail, or business establishment.

(5) *Public transportation vehicles and stops.* No person shall solicit in any public transportation vehicle or within 50 feet of any designated or posted public transportation vehicle stop.

(6) *Gasoline stations and fuel pumps.* No person shall solicit from an operator or occupant of a motor vehicle while such vehicle is stopped in a gasoline station or at a gasoline pump.

EMC § 130.06(D)(1)-(6).  Subsection (D) concludes by providing that the foregoing "provisions shall not apply to solicitations related to business authorized by and/or conducted by the property owner, business owner, or employees thereof on the premises."  EMC § 130.06(D)(6).

37.    Subsection (E) of the amended Ordinance, entitled "*Exemptions,*" provides that "[n]othing in this section shall be construed or prohibit the lawful vending of goods and services."  EMC § 130.06(E).

38.    Subsection (F) of the amended Ordinance, entitled "*Penalty,*" provides that "each act of solicitation is a violation of § 10.99 of the Eureka Municipal Code and shall constitute a separate offense.  A violation of this section is punishable as a misdemeanor or infraction, chargeable at the City Attorney's discretion."  EMC § 130.06(F).  In pertinent part, Eureka Municipal Code Section 10.99 provides as follows:

 (A)  It shall be unlawful for any person to violate any provision or to fail to comply with any of the requirements of this code or the provisions of any code adopted by reference by this code.  Any person violating any of such provisions or failing to comply with any of the mandatory requirements of this code shall be guilty of a misdemeanor.  Any person convicted of a misdemeanor under the provisions of this code shall be punishable by a fine of not more than $1,000 or by imprisonment in the county jail for a period not exceeding six months, or by both such fine and imprisonment. . . .

(B)  In addition to the penalties provided by this section, any condition caused or permitted to exist in violation of any of the provisions of this code, or the provisions of any code adopted by reference by this code, shall be deemed a public nuisance and may be summarily abated by this city, and each day such

condition continues shall be regarded as a new and separate offense.

(C)   Each violation of this code expressly declared to be an infraction is punishable by:

(1)  A fine not exceeding $100 for the first violation;

(2)   A fine not exceeding $200 for the second violation of the same ordinance within one year;

(3)  A fine not exceeding $500 for each additional violation of the same ordinance within one year.

EMC § 10.99.

39.     In the days immediately after the Eureka City Council's adoption of proposed amendments to the Ordinance on March 15, 2016, and continuing until the amended Ordinance became effective on April 14, 2016, EPD officers canvassed the City to inform panhandlers – and others who simply looked down on their luck – that the City's anti-solicitation Ordinance had been amended and would go into effect on April 14th.  While canvassing to inform citizens of the passage of the amended Ordinance, EPD officers approached and spoke only to panhandlers or those they suspected of being panhandlers, not any other category of persons subject to the amended Ordinance's expanded provisions.

40.     EPD officers also distributed fliers to panhandlers during the period between March 15, 2016 and April 14, 2016 which read as follows:

**NOTICE**

The City of Eureka will begin enforcing a new panhandling ordinance on **APRIL 14, 2016.**  All panhandling will be prohibited at the following specified locations:

1.  Within 15 feet of a Bank or ATMs;
2.  To any motor vehicle that is located within two hundred (200) feet of any intersection;
3.  Median Strips;
4.  Within 35 feet of driveways accessing shopping centers, retail, and business establishments;
5.  Within 50 feet of public transportation vehicles and stops; and
6.  Gasoline stations and fuel pumps.

Violation of the ordinance is a misdemeanor.  Call EPD at 441-4060 with any questions.

A true and correct copy of the flier distributed by EPD to panhandlers is attached hereto as **Exhibit B.**  After the amended Ordinance's adoption and before its effective date, the City also

---

recorded a verbal Public Service Announcement accessible by telephone to inform panhandlers that the amended Ordinance would go into effect on April 14, 2016.  Once the amended Ordinance became effective, EPD officers handed out yellow cards listing the new provisions of the amended Ordinance to panhandlers they encountered throughout the City.

41.   Once the amended Ordinance became effective on April 14, 2016, EPD officers immediately began enforcing it.  The day after its effective date, EPD officers warned, then later cited and arrested a panhandler under the amended Ordinance, and impounded the panhandler's dog at the county animal shelter in McKinleyville (more than 13 miles north of Eureka).  The panhandler's dog could only be retrieved from the animal shelter upon payment of a fine and proof of current vaccinations.

42.   The Ordinance is facially invalid, content-based, and abridges the First Amendment rights of persons who seek to panhandle or solicit for donations for their own needs within the City of Eureka.

43.   The Ordinance is facially invalid and content-based because it targets speech based on its content and message of requesting donations for oneself.

44.   The Ordinance is content-based and therefore facially invalid because it singles out speech for restrictions when the speaker's message is to ask for financial assistance for himself, but not if he is asking for something else, such as for a signature on a petition.

45.   Plaintiffs have in the past, and continue today, to solicit for donations at places where the Ordinance specifically prohibits such activity.  Unless or until Defendants are enjoined from enforcing the Ordinance, Plaintiffs will be damaged and Plaintiffs' rights to freedom of speech and equal protection of the laws guaranteed by the First and Fourteenth Amendments to the United States Constitution are being and will continue to be violated.

46.   Mr. Leatherman is a 63-year-old songwriter and musician who has resided in the City of Eureka since 2014.  Mr. Leatherman has written and recorded many original pieces of music, including songs entitled "Change It," "Leaping Lapdogs," and "A Good Chameleon's Hard to Find."  The day after he was cited for panhandling by EPD Officer Neil Hubbard, Mr. Leatherman recorded a tribute version of this final song because of his interactions with EPD

officers attempting to enforce the amended Ordinance against him, and posted it on YouTube after being cited again in September for violation of the Ordinance.  Mr. Leatherman lives on an income well below the federal poverty level, is currently unemployed, and has not been regularly employed for approximately the last six (6) years.  Aside from Social Security retirement benefits and $16.00 per month in food stamps, Mr. Leatherman's only other source of income comes from the monetary donations he receives from passersby and regular supporters – including many employees and customers of Eureka Natural Foods -- when busking in the City of Eureka.  Mr. Leatherman currently has no other prospects for regular employment.  Mr. Leatherman lives out of his van with his dog, a Chihuahua-Jack Russell mix named "Boots."

47.     For the last two-and-a-half years -- since the beginning of 2015 -- Mr. Leatherman has typically chosen to busk on the public sidewalk near a shopping center at the corner of Broadway and W. Fifteenth Streets in Eureka, where Eureka Natural Foods, BevMo, and Jack in the Box are located.  This location has historically been a popular spot in the City to panhandle or request donations from passersby.  Mr. Leatherman usually stands at this location across from Eureka Natural Foods, on the public sidewalk just alongside the BevMo sign and the exit driveway from the shopping center out onto Broadway Street.  A video recording of Mr. Leatherman busking at this location can be viewed at www.youtube.com/watch?v=vk2l2S9IT4M.  He has also busked in the City of Eureka at farmers' markets and community events such as Arts Alive.

48.     When busking, without obstructing any sidewalk or thoroughfare, Mr. Leatherman generally stands on a public sidewalk near an intersection or a street corner between two (2) and four (4) days a week for three (3) to five (5) hours at a time, occasionally accompanied by his dog Boots, and sings while playing songs on his guitar.  Mr. Leatherman typically plays his guitar, sometimes performing with a microphone, microphone stand and portable amplifier, and places his open guitar case beside him on the ground with a large white "Peace" sign made from artificial daisies and a handwritten placard reading "Good Karma $1."  A true and correct copy of a photograph of Mr. Leatherman busking at this location is attached hereto as **Exhibit C**.  Mr. Leatherman's sign is meant to be fun and lighthearted, since karma is

not a commodity that can be bought or sold.  Mr. Leatherman has found that busking on a public sidewalk or street corner, such as the location he prefers outside Eureka Natural Foods and BevMo, is most effective because of the increased exposure to the public available at these locations.  Soliciting, including busking with a sign suggesting donations, is prohibited under the challenged Ordinance at all of these locations where Mr. Leatherman typically busks.

49.    Mr. Leatherman never verbally requests a donation from passersby when busking.  Instead, Mr. Leatherman plays music for the public to enjoy while going about their business, and props a sign on his guitar case that reads "Good Karma $1."  Mr. Leatherman does not wave at passersby or do anything else to attract their attention other than play his guitar and sing, unless a passerby waves at him first and he responds in kind.  Mr. Leatherman only approaches vehicles when he has been summoned by their occupants.

50.    When Mr. Leatherman busks at or near parking lot exits, he always stands on the public sidewalk alongside the exit side of the street to best avoid any traffic disruption.  Mr. Leatherman recognizes that cars are typically proceeding at controlled speed while pulling out of the shopping center parking lot, which is a safe point for them to stop to give money.  Mr. Leatherman has found that people generally do not stop to make donations as they are entering a shopping center parking lot from the street, and Mr. Leatherman would not want them to do so because it could cause street traffic to build up behind them.

51.    Over time, Mr. Leatherman has frequented different locations throughout the City to busk, most of them on public sidewalks.  Since the amended Ordinance's effective date on April 14, 2016, while busking in these places, Mr. Leatherman has been approached more than a dozen times by EPD officers warning him of and sometimes citing him under the amended Ordinance.

52.    On May 13, 2016, around 5:15 p.m., Mr. Leatherman was approached by EPD Sgt. Rodrigo Reyna-Sanchez while busking on the public sidewalk across from Eureka Natural Foods near the intersection of Broadway and W. Fifteenth Streets in Eureka.  After leaving Broadway Street and turning into the entrance driveway to the shopping center, Sgt. Reyna-Sanchez drove at an accelerated rate of speed towards Mr. Leatherman, cutting across both lanes

of the entrance driveway and abruptly stopping just two to three feet away from where Mr.
Leatherman was standing.  Sgt. Reyna-Sanchez parked his patrol car next to Mr. Leatherman in a
manner that blocked the exit driveway from the shopping center, and after getting out of the
vehicle and approaching Plaintiff, told Mr. Leatherman that "you can't be here" because the
amended Ordinance said "no panhandling."  Sgt. Reyna-Sanchez then gave Mr. Leatherman one
of the EPD's yellow cards listing the new additions to the City's anti-solicitation ordinance
which went into effect on April 14, 2016.  After giving him the card, Sgt. Reyna-Sanchez told
Mr. Leatherman that "I can cite you," "I can have you arrested," and "I can impound all your
property" (meaning Mr. Leatherman's dog and the van in which he lives) for violating the
amended Ordinance.  After speaking with Mr. Leatherman for approximately 15 minutes, Sgt.
Reyna-Sanchez returned to his patrol car, parked a short distance away, and continued to watch
Mr. Leatherman for nearly two hours.  Mr. Leatherman was not cited on this occasion.

53.     As a result of his interaction with Sgt. Reyna-Sanchez on May 13, 2016, because
Mr. Leatherman was so concerned that he would be cited, arrested and sent to jail, and that his
dog and all his personal property (including the van in which he lived) would be impounded by
the EPD, that he stopped busking – even though it put his ability to eat and feed his dog at risk.
He also went to the public library the next day to research the law governing busking as a form
of free speech and expression.  After approximately a week, Mr. Leatherman resumed busking
on the public sidewalk by the BevMo sign near the intersection of Broadway and W. Fifteenth
Streets.  Mr. Leatherman also called and spoke with EPD Capt. Brian Stephens to complain
about Sgt. Reyna-Sanchez's behavior.  In the course of that conversation, Capt. Stephens told
Mr. Leatherman that Sgt. Reyna-Sanchez was not responding to any complaint when he stopped
to warn Mr. Leatherman, but that both the Eureka Chief of Police and the City Attorney
considered busking to be the same as panhandling, and that the EPD could and would cite and
arrest him should he continue to busk at locations specified in the amended Ordinance.

54.     On June 20, 2017, Mr. Leatherman was cited by EPD Officer Neil Hubbard for
violation of Section 130.06(D)(2) of the amended Ordinance while busking in the City of Eureka
at his preferred location on the public sidewalk by the BevMo sign near the intersection of

Broadway and W. Fifteenth Streets in Eureka.  A true and correct copy of the citation issued by Officer Hubbard to Mr. Leatherman on June 20, 2017 is attached hereto as **Exhibit D**.  While playing music and singing, Mr. Leatherman was approached by Officer Hubbard, who told Plaintiff "you can't do this" and to "stop [playing], turn it off."  Officer Hubbard then threatened to cite and/or arrest Mr. Leatherman, while freely admitting that he was not responding to any citizen complaint in detaining Plaintiff.  In the location where he was standing and playing music when approached by Officer Hubbard, Mr. Leatherman was not obstructing any sidewalk or thoroughfare.

55.     On August 31, 2017, the *North Coast Journal* weekly newspaper published an article by Linda Stansberry entitled "Strumming Up a Case," which described Mr. Leatherman's encounters with EPD officers while busking in the City and his intent to file a lawsuit challenging the constitutionality of the City's amended Ordinance.

56.     Just six (6) days later on September 5, 2017, while busking at his preferred location on the public sidewalk by the BevMo sign near the intersection of Broadway and W. Fifteenth Streets, Mr. Leatherman again was cited by EPD officers for violation of the amended Ordinance.  This time, Mr. Leatherman was confronted by *six (6) EPD officers, including a probation officer, and a police dog who arrived in five (5) separate police vehicles to give him a misdemeanor citation* for panhandling in violation of the amended Ordinance.  A true and correct copy of the citation given to Mr. Leatherman by EPD Sgt. Lenny LaFrance on September 5, 2017 is attached hereto as **Exhibit E**.

57.     Mr. Frederick Portigal, a Canadian tourist who was passing by when EPD officers cited Mr. Leatherman on September 5, was harassed and intimidated, detained, and eventually handcuffed, put into a patrol car, and detained by EPD officers after taking photographs of their interaction with Mr. Leatherman and putting $10.00 in Mr. Leatherman's guitar case.  True and correct copies of photographs taken by Mr. Portigal of Mr. Leatherman's encounter with EPD officers on September 5, 2017 are attached hereto as **Exhibit F**.  A video recording taken by Mr. Leatherman of a portion of his encounter with EPD officers on September 5, including footage of EPD officers handcuffing and putting Mr. Portigal in a patrol car, can be viewed online at

https://drive.google.com/file/d/0ByuOdU5rl_oDQzIxM053M2dHeXc/view.  As Mr.

Leatherman's video recording documents, after Plaintiff objected to the EPD's treatment of Mr.

Portigal, EPD Sgt. LaFrance told Mr. Leatherman "[n]ow, he might go to jail for you, Oscar, is

that OK?  He might go to jail for you now."

58.    A nine-minute video recording of the same September 5, 2017 incident, taken by

a bystander who happened to witness it and also including footage of EPD officers handcuffing

Mr. Portigal, can be viewed online at https://www.youtube.com/watch?v=h-EsH6RyxZg.  As

this nine-minute video recording shows, EPD Sgt. Lenny LaFrance also approached and harassed

the bystander who took video footage of this incident, giving him a verbal warning for "staring"

at their police dog and telling him he could "go to jail for that for sure."  Sgt. LaFrance also

asked this bystander, without any apparent cause, "you're not a sex offender, right," and

threatened to search him.

59.    If the Ordinance limiting solicitation within the City of Eureka continues to be

enforced, it will limit Mr. Leatherman's ability to busk at the locations he frequently uses for that

purpose, and Mr. Leatherman will be unable to continue busking in the locations he has

historically busked within the City of Eureka without reasonable fear of citation or arrest.  This

will not only limit Mr. Leatherman's ability to busk and play music in public, but it also deprive

him of an important source of income, and will threaten his ability to sustain himself and his dog

Boots with food and basic necessities.  Mr. Leatherman fears that he will be driven out of the

City of Eureka or thrown into jail due to enforcement of the Ordinance.

60.    Mr. Pifferini is a 35-year-old lifelong resident of Humboldt County.  Born in

Arcata and raised in Orick and Eureka, Mr. Pifferini has been a homeless resident of the City of

Eureka for the last three (3) years.  Mr. Pifferini camps at various locations in Eureka –

sometimes on public property, and sometimes on private property with the owner's permission --

with his friend Veronica and her cat named Precious.  Mr. Pifferini lives on an income well

below the federal poverty level, is currently unemployed, and has not been regularly employed

for approximately the last 3 ½ years.  Aside from $190.00 per month in food stamps and what he

earns from collecting recycling at legal locations outside the city limits, Mr. Pifferini's only other

source of income comes from the monetary donations he receives from passersby while panhandling in the City of Eureka.  Mr. Pifferini currently has no other prospects for regular employment.

61.     Mr. Pifferini panhandles by holding a variety of signs with messages such as "IT'$ A BIT COLD," "NEED HELP – ANYTHING HELPS," and "DONATIONS." Mr. Pifferini panhandles on public sidewalks throughout Eureka, including the public sidewalk in the 2600 block of Broadway Street, the public sidewalk on Broadway Street near the Bayshore Mall, and the public sidewalk near the Costco store located at 1006 W. Wabash Avenue in Eureka. Mr. Pifferini usually panhandles every day, and typically panhandles for two (2) to three (3) hours at a time, sometimes up to three (3) times per day.  He finds panhandling on public sidewalks to be most effective, particularly near intersections, because soliciting at such locations gives passersby the best opportunity to stop and give him a donation.

62.     Mr. Pifferini does not verbally request donations from passersby when panhandling, and does not engage in aggressive panhandling.  He does not gesture or wave at passersby to attract their attention, and instead simply holds his sign and smiles.  Mr. Pifferini only speaks to passersby while panhandling when first acknowledged by them, and does not approach vehicles until summoned to do so by their occupants.

63.     Over time, Mr. Pifferini has frequented different locations throughout the City to panhandle, most of them on public sidewalks.  Since the amended Ordinance's effective date on April 14, 2016, while panhandling in these locations, Mr. Pifferini has been approached dozens of times by EPD officers warning him under the amended Ordinance, sometimes multiple times per day, and has been cited under the amended Ordinance at least five (5) times.  Along with citing Mr. Pifferini for panhandling in violation of the amended Ordinance, the City has issued "stay-away" orders barring Mr. Pifferini from local businesses near the areas in which he panhandles, including Eureka's Bayshore Mall.

64.     On or about April 16, 2016, at approximately 12:40 p.m., Mr. Pifferini was cited by EPD Officer Tae Song for violation of Section 130.06 of the amended Ordinance while panhandling on the public sidewalk near the north entrance to the Bayshore Mall, located at 3300

Broadway Street in the City of Eureka.  A true and correct copy of the citation issued by Officer Song to Mr. Pifferini on or about April 16, 2016 is attached hereto as **Exhibit G**.  On this occasion, Mr. Pifferini was holding a cardboard sign with the word "DONATIONS" written on the front in purple ink, and the phrase "LEGALIZE PANHANDLING" written on the back in black ink.  When cited by Officer Song, Mr. Pifferini was holding his sign so passersby could read only the word "DONATIONS."

65.     On or about April 23, 2017, at approximately 3:36 p.m., Mr. Pifferini was cited by EPD Officer Ryan McElroy for violation of Section 130.06 of the amended Ordinance while panhandling on the median strip near the north entrance to the Bayshore Mall, located at 3300 Broadway Street in the City of Eureka.  A true and correct copy of the citation issued by Officer McElroy to Mr. Pifferini on or about April 23, 2017 is attached hereto as **Exhibit H**.  On this occasion, Mr. Pifferini was holding a sign that Officer McElroy reported was "soliciting money/food from passing motorists who were leaving the Bayshore Mall."

66.     On or about April 24, 2017, at approximately 5:26 p.m., Mr. Pifferini was cited by EPD Officer Huynh for violation of Section 130.06 of the amended Ordinance while panhandling on the public sidewalk near the north entrance to the Bayshore Mall, located at 3300 Broadway Street in the City of Eureka.  A true and correct copy of the citation issued by Officer Huynh to Mr. Pifferini on or about April 24, 2017 is attached hereto as **Exhibit I**.

67.     In addition to being cited for panhandling in violation of the amended Ordinance, EPD officers also have cited Mr. Pifferini under the amended Ordinance for standing on public sidewalks and median strips while holding political signs, protesting the amended Ordinance, that do not request donations or money or other things of value.  On these political signs, Mr. Pifferini has written messages such as "PANHANDLING IS A CONSTITUTIONAL RIGHT AND IS PROTECTED," and "WHY DO SOME OF US STILL PANHANDLE?  BECAUSE WE'RE THE ONLY ONES LEFT WITH NO OTHER MEANS."  On information and belief, no individuals ever have been cited by EPD officers for violation of the amended Ordinance as a result of holding any political or protest signs containing speech relating to issues other than panhandling.

68.     On or about March 23, 2017, at approximately 1:30 p.m., Mr. Pifferini was cited by EPD Detective Neil Hubbard for violation of Section 130.06(D)(3) of the amended Ordinance while panhandling on the public sidewalk and on the traffic median strip just south of the north entrance to the Bayshore Mall, located at 3300 Broadway in the City of Eureka.  True and correct copies of the citation issued by Officer Hubbard to Mr. Pifferini on or about March 23, 2017 and the misdemeanor complaint filed by the City in connection with that citation are attached hereto as **Exhibit J**.  On this occasion, Mr. Pifferini was holding a sign in his hands that read "BEGGING SHOULDN'T BE A CRIME," and at his feet, Mr. Pifferini had propped a larger sign reading "Begging isn't a crime. WWW.IPETITION.COM/ Begging_Shouldn't_be_a_crime."  Despite the fact that neither sign displayed by Mr. Pifferini requested donations of money or any other thing of value, Detective Hubbard concluded that Mr. Pifferini's signs were "an attempt to solicit money and/or other gratuities."  In addition to giving him a citation, Detective Hubbard gave Mr. Pifferini a copy of the amended Ordinance and told him if he had any complaints about the way the Ordinance was written, he should "tell it to the judge."  Mr. Pifferini's March 23, 2017 citation was referred to the Eureka City Attorney, who requested that in addition to other penalties, a stay-away order be issued against Mr. Pifferini barring him from the Bayshore Mall property located at 3300 Broadway Street in the City of Eureka.

69.     On or about March 26, 2017, at approximately 1:24 p.m., Mr. Pifferini was cited by EPD Officer Huynh for violation of Section 130.06 of the amended Ordinance while panhandling on the public sidewalk near the Bayshore Mall, located at 3300 Broadway Street in the City of Eureka.  True and correct copies of the citation issued by Officer Huynh to Mr. Pifferini on or about March 26, 2017 and the misdemeanor complaint filed by the City in connection with that citation are attached hereto as **Exhibit K**.  On this occasion, Mr. Pifferini was holding a cardboard sign reading "It's illegal for me to ask for help but I have free speech." Officer Huynh told Mr. Pifferini during this encounter that "we've told you a million times that panhandling is illegal in the City of Eureka."  Mr. Pifferini received a monetary donation from a passing motorist while Officer Huynh was filling out his citation.  Mr. Pifferini's March 26, 2017

---

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL AND CONSTITUTIONAL RIGHTS

OSCAR LEATHERMAN *et al.* v. CITY OF EUREKA *et al.*

citation was referred to the Eureka City Attorney, who again requested that in addition to other penalties, a stay-away order be issued against Mr. Pifferini barring him from the Bayshore Mall property located at 3300 Broadway Street in the City of Eureka.

70.     In addition to continually harassing him with citations and warnings for violation of the City's anti-panhandling Ordinance, sometimes multiple times a day, EPD officers habitually harangue and insult Mr. Pifferini during these interactions, denigrating him for his status as an impoverished person forced to seek help from others in order to survive.  In the course of citing or warning him for violation of the anti-panhandling Ordinance, EPD officers have called him obscene names, told him that "all you bums are heroin addicts," and called panhandlers "scumbags" who were violating the rights of others by asking for help.  EPD officers have also told Mr. Pifferini – a Humboldt County native who was raised in Eureka – to "get out of town" because "nobody wants you here."

71.     Mr. Pifferini even has been harassed by EPD officers for panhandling in locations where the amended Ordinance does not prohibit solicitation.  On or about November 29, 2017, for instance, while panhandling on the public sidewalk along Henderson Street in the City of Eureka in a location that was not delineated as proscribed under any of Section 130.06(D)(1) through (6), Mr. Pifferini was approached by EPD Officer Rodrigo Reyna-Sanchez.  Seeing that Mr. Pifferini was panhandling, Officer Reyna-Sanchez pulled his squad car up alongside Mr. Pifferini and shouted "Get the hell out of here, Kelly," demanding that he leave the location immediately.  Mr. Pifferini pointed out that the location where he was panhandling was not within two hundred (200) feet of any intersection, on a median strip, within thirty-five (35) feet of a driveway providing vehicular access to a shopping center, retail, or business establishment, or in any other way within the scope of Section 130.06(D)(1) through (6), but Officer Reyna-Sanchez continued to insist that Mr. Pifferini leave the location immediately.  Eventually, Officer Reyna-Sanchez drove away after yelling "I'm going to take your stuff, then" – presumably meaning any items he could confiscate from Mr. Pifferini's campsite.  Mr. Pifferini was not cited for violation of the amended Ordinance on this occasion.

72.     If the Ordinance limiting solicitation within the City of Eureka continues to be enforced, it will limit Mr. Pifferini's ability to panhandle at the locations he frequently uses for that purpose, and Mr. Pifferini will be unable to continue panhandling in the locations he has historically panhandled within the City of Eureka without reasonable fear of citation or arrest. This will deprive Mr. Pifferini of an important source of income, and will threaten his ability to sustain himself with food and basic necessities.  Mr. Pifferini fears that he will be driven out of the City of Eureka or thrown into jail due to enforcement of the amended Ordinance.

## FIRST CLAIM FOR RELIEF

### Freedom of Speech

### (First & Fourteenth Amendments to the U.S. Constitution; 42 U.S.C. § 1983)

73.     Plaintiffs reallege and incorporate the allegations of each and every preceding paragraph of this Complaint as if fully set forth herein.

74.     By enforcing the challenged Ordinance, Defendants, under color of state law, have caused and will continue to cause Plaintiffs and others in the City of Eureka who wish to busk, engage in political protest, or simply to solicit for their own survival needs, to be subjected to the deprivation of their constitutional rights, in violation of 42 U.S.C. § 1983.

75.     The Ordinance, both on its face and as applied, denies Plaintiffs' rights to freedom of speech guaranteed by the First Amendment to the United States Constitution.

76.     As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and will continue to suffer injuries entitling them to receive compensatory damages and injunctive relief.  Plaintiffs therefore seek relief as set forth below in their Prayer for Relief.

## SECOND CLAIM FOR RELIEF

### Equal Protection

### (Fourteenth Amendment to the U.S. Constitution; 42 U.S.C. § 1983)

77.     Plaintiffs reallege and incorporate the allegations of each and every preceding paragraph of this Complaint as if fully set forth herein.

78.     By enforcing the challenged Ordinance, Defendants, under color of state law, have caused and will continue to cause Plaintiffs and others in the City of Eureka who wish to

busk, engage in political protest, or simply to solicit for their own survival needs, to be subjected to the deprivation of their constitutional rights, in violation of 42 U.S.C. § 1983.

79.     The Ordinance, both on its face and as applied, denies Plaintiffs' rights to equal protection under the law guaranteed by the Fourteenth Amendment to the United States Constitution.

80.     As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and will continue to suffer injuries entitling them to receive compensatory damages and injunctive relief.  Plaintiffs therefore seek relief as set forth below in their Prayer for Relief.

### THIRD CLAIM FOR RELIEF

### Declaratory Judgment

### (28 U.S.C. § 2201)

81.     Plaintiffs reallege and incorporate the allegations of each and every preceding paragraph of this Complaint as if fully set forth herein.

82.     There exists an actual, substantial controversy between the parties regarding the constitutionality of the Ordinance.  Plaintiffs are entitled to a declaration of their rights pursuant to the First and Fourteenth Amendments to the U.S. Constitution, in light of the enactment of the Ordinance.  Plaintiffs therefore seek relief as set forth below in their Prayer for Relief.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request relief from the Court as follows:

1.     For permanent injunctive relief;

2.     For declaratory relief;

3.     For compensatory, general, and special damages in an amount according to proof;

4.     For attorneys' fees as provided by law, pursuant to 42 U.S.C. § 1988, and any other statute as may be applicable;

5.     For costs of suit; and

6.     For such other and further relief as the Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all issues triable to a jury.

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL AND CONSTITUTIONAL RIGHTS

OSCAR LEATHERMAN *et al.* v. CITY OF EUREKA *et al.*

Dated:  December 7, 2017

Respectfully Submitted,

/s/ *Shelley K. Mack*

_____

Peter E. Martin
Shelley K. Mack
Attorneys for Plaintiffs
OSCAR LEATHERMAN and KELLY PIFFERINI

FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL AND CONSTITUTIONAL RIGHTS

OSCAR LEATHERMAN *et al.* v. CITY OF EUREKA *et al.*