UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OSCAR LEATHERMAN, et al.,

    Plaintiffs,

v.

STEVE WATSON, et al.,

    Defendants.

Case No. 17-cv-05610-HSG

**ORDER DENYING MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Re: Dkt. No. 11

Defendants City of Eureka, Eureka Police Department, and Interim Police Chief Watson move to dismiss the First Amended Complaint filed by Plaintiffs Oscar Leatherman and Kelly Pifferini. Dkt. Nos. 11, 11–1 ("Mot."). For the reasons articulated below, the motion is DENIED.

## I.   BACKGROUND

Subsection (D) of Eureka Municipal Code Section 130.06 (the "Ordinance") prohibits solicitation with the purpose of obtaining an immediate donation or a sale of goods or services in specified areas. Dkt. No. 1–1 ("EMC"). These areas include median strips, within 200 feet of an intersection, within 15 feet of banks and ATMs, within 35 feet of driveways to shopping centers and business establishments, and at gasoline stations. *Id*.

Mr. Leatherman is an unemployed homeless individual who depends on the financial contributions he receives while busking. Dkt. No. 1 ("FAC") ¶¶ 5, 46. He plays guitar and sings on sidewalks with a sign that reads "Good Karma $1." *Id*. ¶¶ 48–50. He has twice been cited for busking by the BevMo sign on the intersection of Broadway and West Fifteenth Street. *Id*. ¶¶ 54, 56.

Mr. Pifferini is also an unemployed homeless individual who relies on panhandling in Eureka for his survival. *Id*. ¶¶ 6, 60. He holds various signs, including signs that read "it'$ a bit cold," and "donations." *Id*. at ¶¶ 61. He has been cited at least five times, and he claims that on

three of those occasions he was holding political signs protesting the Ordinance. *Id*. ¶ 67–69. Mr. Pifferini also says he has been warned by EPD officers while panhandling in locations not encompassed by the Ordinance. *Id*. at ¶ 71.

On September 28, 2017, Plaintiffs filed suit against Defendants under 42 U.S.C. section 1983 for violations of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. *Id*. Plaintiffs Leatherman and Pifferini challenge the Ordinance as an unconstitutional content-based restriction on speech. *Id*.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

"Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If dismissal is appropriate under Rule 12(b)(6), a court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir.

2000) (quotation marks and citation omitted).

## III. DISCUSSION

Defendants move to dismiss the FAC for failure to state a claim, challenge Mr. Leatherman's Article III standing, and seek dismissal of Defendant Watson under the doctrine of qualified immunity.[1] Mot. at 2. The Court addresses each argument in turn.

### A. First Amendment Claims

Defendants claim that Plaintiffs fail to allege facts sufficient to support facial or as-applied challenges to the Ordinance. Mot. at 5–10.

#### 1. Facial Challenge

Defendants contend that Plaintiffs have failed to allege that the text of the Ordinance is facially invalid. Mot. at 5–6. Defendants claim that the Ordinance is valid on its face because: (1) the Ordinance applies only to non-public fora, where First Amendment free speech protections do not extend; (2) Plaintiffs have not alleged that the Ordinance is a content-based law; and (3) even if the Ordinance were content-based, Plaintiffs have not alleged that the Ordinance would not survive strict scrutiny. Mot. at 7–10. The Court finds none of these arguments persuasive.

##### a. Public Fora

Defendants contend that the areas covered by the Ordinance are non-public fora, and as such require Plaintiffs to allege that "the Ordinance is unconstitutional because it is either unreasonable or it is not viewpoint neutral." Mot. at 8.

"[T]he government need not permit all forms of speech on property that it owns and controls." *Int'l Soc. for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678 (1992). When a government entity restricts speech on its property, those restrictions are evaluated through a "forum based" approach. *Id*. "[R]egulation of speech on government property that has

---

[1] Defendants additionally allege that Plaintiffs fail to give fair notice of their First Amendment claims in the FAC by failing to specify the section of the Ordinance that is allegedly unconstitutional and failing to specify the specific speech that is allegedly targeted. Mot. at 10. The Court disagrees. Plaintiffs need only inform Defendants of what the claims are and the grounds upon which they rest. *See, e.g., Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). Here, Plaintiffs have thoroughly established the basis for their complaint at the pleading stage. *See, e.g.,* FAC ¶¶ 35–36, 43, 46, 60, 71, 73–76.

3

traditionally been available for public expression is subject to the highest scrutiny. Such regulations survive only if they are narrowly drawn to achieve a compelling state interest." *Id*. Regulation of speech in nonpublic fora "need only be reasonable, as long as the regulation is not an effort to suppress the speaker's activity due to disagreement with the speaker's view." *Id*. at 679. Government property is considered a nonpublic forum if the property does not "by tradition or designation serve as a forum for public communication." *Wright v. Incline Vill. Gen. Improvement Dist.*, 665 F.3d 1128, 1134 (9th Cir. 2011) (internal quotation marks omitted).

Here, the fora in question include median strips, driveways to business establishments, public transportation stops, intersections, and banks and their immediate surrounding areas. FAC ¶ 36; EMC § 130.06(D)(1)–(6). Streets, sidewalks, and traffic medians are traditional public fora. *See Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 945 (9th Cir. 2011) (noting that for purposes of a free speech challenge, public streets and sidewalks are "the archetype of a traditional public forum"); *Cutting v. City of Portland, Maine,* 802 F.3d 79, 83 (1st Cir. 2015) (identifying median strips as traditional public fora). Plaintiffs allege that Mr. Pifferini has been cited by EPD officers for violating the Ordinance on public sidewalks and medians near the entrance of the local mall. FAC ¶¶ 64–69. Plaintiffs further allege that Mr. Leatherman has been cited on the sidewalk by an intersection. FAC ¶¶ 54, 56. As to the other areas mentioned in the Ordinance, Defendants' contend that they are nonpublic "because common sense dictates that these locations are not areas by tradition or designation that serve as a forum for public communication." Mot. at 8. This unsupported contention does not render Plaintiffs' allegations insufficient to state a claim. Plaintiffs have sufficiently alleged that the Ordinance targets speech in public fora.[2]

### b. Content-Based vs. Content-Neutral

Defendants contend that "the FAC contains no allegations that the Ordinance is not

---

[2] Defendants rely on *International Society for Krishna Consciousness, Inc.* to assert that the fora in question are nonpublic. Mot. at 8 (citing 505 U.S. 672, 678 (1992)). *Krishna*, which held that airport terminals are nonpublic for purposes of the First Amendment and did not address the separate issue of streets and sidewalks, does not concern the fora in question here. *Int'l Soc. for Krishna Consciousness, Inc.*, 505 U.S. at 672.

4

viewpoint neutral." Mot. at 9.

"Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert, Ariz.*, 135 S.Ct. 2218, 2226 (2015). Conversely, if a regulation is content-neutral, the government may limit "the time, place, and manner of expression," so long as the regulation is "narrowly tailored to serve a significant government interest, and leave[s] open ample alternative channels of communication." *Comite de Jornaleros*, 657 F.3d at 940 (internal quotation marks omitted).

Under the Ordinance, "solicitation" means "to ask, beg, request, and/or panhandle using the spoken, written, or printed word, or bodily gestures, signs or other means with the purpose of obtaining an immediate donation of money or other thing of value or soliciting the sale of goods or services." EMC § 130.06(B); FAC ¶ 33. "[G]overnment regulation of speech is content-based if a law applies to particular speech because of the topic discussed or the idea or message expressed," and a speech regulation may be content-based "even if it does not discriminate among viewpoints within that subject matter." *Reed*, 135 S.Ct. at 2227, 2230.

Plaintiffs plausibly allege that the Ordinance distinguishes types of speech based on the message expressed. *See* FAC ¶ 33; *Reed*, 135 S.Ct. at 2230. Several courts have interpreted *Reed* to apply to anti-solicitation ordinances and found that such ordinances are content-based. *See, e.g., Norton v. City of Springfield III*, 806 F.3d 411, 412–13 (7th Cir. 2015) (holding that a city's anti-panhandling ordinance was not content-neutral); *McLaughlin v. City of Lowell*, 140 F.Supp.3d 177, 185–86 (D. Mass. 2015) (finding a city ordinance banning aggressive panhandling was a content-based restriction on speech); *Thayer v. City of Worcester*, 144 F.Supp.3d 218, 233–34 (D. Mass. 2015) (finding that an anti-solicitation ordinance was content-based and subject to strict scrutiny); *Browne v. City of Grand Junction*, 136 F.Supp.3d 1276, 1290–91 (D. Colo. 2015) (finding a city's provision that prevented solicitation at specified times was content-based and failed to survive strict scrutiny); *Blitch v. City of Slidell*, 260 F.Supp.3d 656, 673 (E.D.La. 2017) (finding a city's anti-panhandling ordinance that prohibited panhandling without a permit was content-based and unconstitutional under strict scrutiny). By noting that the Ordinance targets

solicitations for immediate donations, such as by panhandling or busking, but not solicitations authorized by nearby businesses, Plaintiffs plausibly allege that the Ordinance targets speech based on its communicative content. FAC ¶¶ 29–31.

### c. Strict Scrutiny

Defendants contend that even if the Ordinance is content-based, the FAC fails to allege that the Ordinance would not survive strict scrutiny. Mot. at 9. Specifically, Defendants contend that the FAC does not allege that public safety and welfare is not a compelling government interest, nor does it allege that the Ordinance is unnecessary or that there are lesser restrictive means to achieve this interest. *Id.* at 9, 10.

Defendants misapprehend the pleading standard. Strict scrutiny requires that the government prove that its regulation "furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed*, 135 S.Ct at 2231. Courts have found that determining the level of scrutiny to apply is a "fact-dependent inquir[y] that [is] unsuitable for resolution at the pleading stage." *Duronslet v. Cty. of L.A.*, 266 F.Supp.3d 1213, 1223 (C.D. Cal. 2017). The Court need only find that Plaintiffs "plausibly established that some form of heightened scrutiny might apply." *Id*. Plaintiffs contend that the text of the Ordinance indicates that it is intended to only apply to panhandling, and not to other forms of solicitation that create similar safety concerns. FAC ¶¶ 29–31. They allege that during the drafting process of the Ordinance, no category of persons was discussed other than panhandlers. *Id*. ¶¶ 16–25. As a result, they contend, the Ordinance "effectively outlaws panhandling in the City's most popular begging spots." *Id*. ¶ 26 (internal quotation marks omitted). At this stage, the Court finds that Plaintiffs allege sufficient facts to support their facial challenge to the Ordinance.

### 2. As-Applied Challenges

The Supreme Court has found that "the distinction between facial and as-applied challenges . . . goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint." *Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 331 (2010). "An as-applied challenge contends that [a] law is unconstitutional as applied to [a] litigant's particular speech activity, even though the law may be capable of valid application to others." *Desert*

6

*Outdoor Advert., Inc. v. City of Oakland*, 506 F.3d 798, 805 (9th Cir. 2007) (internal citation and quotation marks omitted). To claim that the Ordinance was discriminatorily enforced by EPD officers, Plaintiffs must allege that the officers manifested "any degree of subjectivity" or "undue discretion." *Id*. Here, the Court finds that Plaintiffs allege sufficient facts to support both Mr. Pifferini and Mr. Leatherman's as-applied challenges.

### a. Plaintiff Pifferini

Defendants contend that Plaintiffs fails to state in plain language why the Ordinance is unconstitutional as applied to Mr. Pifferini. Mot. at 7; Reply at 7. Plaintiffs allege that the Ordinance was unconstitutionally applied to Mr. Pifferini because he was cited for pure protest activities and warned for non-aggressive panhandling in areas not encompassed by subsection (D) of the Ordinance. FAC ¶¶ 67–69, 71. Mr. Pifferini claims that "[o]n information and belief, no individuals have ever been cited by EPD officers for violation of the Ordinance as a result of holding any political or protest signs containing speech relating to issues other than panhandling." FAC at ¶ 67. Taken as true, the allegations contend that EPD officers discriminated in their enforcement of the Ordinance with respect to Mr. Pifferini. These allegations thus support a plausible inference that EPD officers acted against Mr. Pifferini based on viewpoint discrimination.

### b. Plaintiff Leatherman

Defendants additionally contend that Plaintiffs fail to allege that Mr. Leatherman's citations were issued based on a discriminatory enforcement of the Ordinance.[3] Mot. at 6–7, 13; Reply at 10.

Plaintiffs allege that EPD officers targeted Mr. Leatherman because of his busking. FAC ¶¶ 52–58. They allege that that on multiple occasions the police have threatened Mr. Leatherman or bystanders with jail time, even though the penalty for violating the Ordinance is a fine. FAC ¶¶

---

[3] Defendants also contend that because the two citations assessed to Mr. Leatherman pursuant to the Ordinance were issued on private property where Mr. Leatherman has no First Amendment rights, and because the two citations were ultimately dismissed, Mr. Leatherman's as-applied challenge necessarily fails. Mot. at 6. Defendants raise the same arguments in challenging Mr. Leatherman's standing. Mot. at 13–14. In this section, the Court will only address the issue of discriminatory enforcement.

7

57–58. From these allegations, it is plausible at this stage to infer discriminatory enforcement of the Ordinance as applied to Mr. Leatherman.

### B. Fourteenth Amendment Claim

The parties agree that the Fourteenth Amendment claim is "coterminous with" or "virtually identical to" the First Amendment claims. Opp. at 24; Reply at 8. Plaintiffs allege that subsection (D) of the Ordinance violates their right to Equal Protection. Opp. at 24. Defendants contend that Plaintiffs' Fourteenth Amendment claim is insufficiently pled for the same reasons as presented with respect to Plaintiffs' First Amendment claim. Reply at 8–9.[4]

The Court finds that Plaintiffs have pled sufficient facts for an equal protection claim. To show that the enforcement of a law violated the Equal Protection Clause, a plaintiff must show that it (1) had a discriminatory effect, and (2) was motivated by a discriminatory purpose. *Wayte v. United States*, 470 U.S. 598, 608 (1985). Here, Plaintiffs allege facts that plausibly lead to an inference that the Ordinance has a discriminatory effect. They allege that the text of the Ordinance itself discriminates against panhandlers and buskers. FAC ¶¶ 29–31. Further, Plaintiffs allege that the way the Ordinance has been enforced has led to Plaintiffs being harassed and threatened with penalties beyond the scope of the Ordinance, even when they are soliciting in non-restricted areas or arguably not soliciting at all. FAC ¶¶ 52 (alleging that EPD officers threatened to arrest Mr. Leatherman and impound his possessions); 57–58 (alleging that EPD officers harassed Mr. Leatherman and threatened bystanders with jail time); 67–71 (alleging that Mr. Pifferini has been harassed by the police and given citations even when he was holding political signs or panhandling in non-restricted areas).

Plaintiffs also allege that the Ordinance was adopted for a discriminatory purpose. Plaintiffs allege that during the public comment process for the Ordinance, members of the Eureka

---

[4] Defendants also claim that Plaintiffs are alleging wealth discrimination, and because poverty is not recognized by the Supreme Court as a protected status, their equal protection claim should fail. Dkt. No. 11–2, Reply at 9. This argument fails, because a plaintiff may bring equal protection claims even if she is not a member of a protected class. *See Village of Willowbrook, et al. v. Olech*, 528 U.S. 562, 564 (2000) ("Our cases have recognized successful equal protection claims brought by a class of one, where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." (internal quotation marks omitted)).

City Council called panhandling "predatory," and said panhandlers should accept the free meals allegedly offered by the city instead of soliciting donations. FAC ¶ 24. Plaintiffs also allege that councilmembers distinguished commercial solicitations like the sale of Girl Scout cookies, saying that they did not pose a threat to public safety because they were "authorized," without providing any substantive point of differentiation. FAC ¶ 22. These allegations, if taken as true, plausibly support a claim of discriminatory purpose.

### C. Plaintiff Leatherman's Standing

Defendants claim that Plaintiff Leatherman lacks standing to bring either an as-applied or a facial challenge to the Ordinance.

#### 1. As-Applied Challenge Standing

Article III standing requires that a plaintiff (1) suffered an injury in fact (2) that is fairly traceable to the challenged conduct of the defendant and (3) that is likely to be redressed by a favorable judicial decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). Defendants argue that Mr. Leatherman cannot satisfy the first and third requirements for Article III standing. Mot. at 11. Defendants claim that Mr. Leatherman suffered no injury in fact because he received citations for busking on private property not covered by First Amendment protections. *Id*. Further, Defendants claim that because Mr. Leatherman's citations were dismissed, his claims are not redressable by a favorable judicial decision. Mot. at 13–14.

First Amendment cases "tilt dramatically toward a finding of standing." *Lopez v. Candaele*, 630 F.3d 775, 781 (9th Cir. 2010) (internal quotation marks omitted). "[W]here a plaintiff has refrained from engaging in expressive activity for fear of prosecution under the challenged statute, such self-censorship is a constitutionally sufficient injury as long as it is based on an actual and well-founded fear that the challenged statute will be enforced." *Libertarian Party of Los Angeles Cty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013) (internal quotation marks omitted). Three factors determine whether a threat of prosecution is genuine: (1) whether plaintiffs have a concrete plan to violate the law in question; (2) whether authorities have communicated warnings or threats to prosecute the plaintiffs; and (3) past enforcement of the challenged statute. *Id*.

Here, Plaintiffs allege that Mr. Leatherman stopped busking for some time because he "was so concerned that he would be cited, arrested and sent to jail." FAC ¶ 53. The FAC also plausibly alleges that the threat of prosecution is genuine. Plaintiffs allege that the continued enforcement of the Ordinance "will limit Mr. Leatherman's ability to busk at the locations he frequently uses . . . without reasonable fear of citation or arrest." FAC ¶ 59. These allegations demonstrate that Mr. Leatherman has a concrete plan to continue busking despite the risk. Further, Plaintiffs allege that the EPD has warned and threatened to prosecute Mr. Leatherman. FAC ¶¶ 53–56. Finally, the FAC alleges past enforcement of the statute with respect to both Mr. Leatherman and Mr. Pifferini. FAC ¶¶ 52–58, 64–69. These allegations raise a plausible threat of prosecution sufficient to establish a cognizable injury to Mr. Leatherman.

Defendants contend that because the area in which Mr. Leatherman busks is a privately-owned sidewalk, his rights to free speech do not extend there. Mot. at 11–12 (*citing Hudgens v. N.L.R.B.*, 424 U.S. 507, 520–21 (1976)). Under certain circumstances, the First Amendment right to free speech applies even on private property. *See e.g.*, *Venetian*, 257 F.3d at 948. In *Venetian*, the Ninth Circuit supplied the following factors for distinguishing private property on which freedom of speech is protected: the historically public character of the area, the area's continued use by the public, the fact that the area is virtually indistinguishable from the surrounding public areas, and the dedication of the sidewalk for public use. *Venetian*, 257 F.3d at 947. Here, Plaintiffs allege that the area at issue is a "public sidewalk" that "has historically been a popular spot in the City to panhandle." FAC ¶ 47. Plaintiffs have therefore plausibly alleged that the area is of historically public character and has been used continuously by the public for panhandling purposes.

Defendants also contend that Mr. Leatherman's descriptions of his other busking areas in the FAC are too vague to determine whether those areas are in fact encompassed by the Ordinance. Mot. at 12. Mr. Leatherman identifies places where he busks as "near an intersection or a street corner." FAC ¶ 48. The Court finds that such an identification is sufficient in consideration of the text of the Ordinance, which prohibits busking within 200 feet of an intersection. *See Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 554 (4th Cir. 2013) (holding

that an appellant's allegation of being cited near an area where an anti-solicitation regulation restricted speech was sufficient at the pleading stage).

### 2. Facial Challenge Standing

A plaintiff has standing to bring a facial First Amendment challenge when he or she "argue[s] that an ordinance . . . impermissibly restricts a protected activity, and such facial challenges may be paired with as-applied challenges." *Real v. City of Long Beach*, 852 F.3d 929, 933 (9th Cir. 2017) (internal quotation marks omitted). Plaintiffs need not present any evidence of harm to third parties to assert such a challenge, nor even evidence of past harm to themselves. *See id.*; *Ariz. Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003) ("[I]t is sufficient for standing purposes that the plaintiff intends to engage in a course of conduct arguably affected with a constitutional interest and that there is a credible threat that the challenged provision will be invoked against the plaintiff.") (internal quotation marks and citation omitted). Accordingly, Defendants' argument that Mr. Leatherman suffers no injury in fact because the area in which he busks is private property and because his citations were dismissed is irrelevant to a standing analysis for purposes of a facial First Amendment challenge. *See* Mot. at 11–12. As mentioned above in Section 1, Plaintiffs allege that Mr. Leatherman intends to continue busking in public areas. FAC ¶ 59. Plaintiffs also allege that the Ordinance poses a threat to this course of conduct, and that such a threat interferes with their constitutional rights. *Id.* ¶¶ 42 – 45, 59. These facts are sufficient to establish standing for Mr. Leatherman's facial challenge.

### D. Defendant Watson's Qualified Immunity

Public officials are immune from suit under 42 U.S.C. Section 1983 unless they have "violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014) (internal quotation marks omitted). Defendants argue that there is no clearly established law because solicitation ordinances have produced different outcomes in different jurisdictions depending on the facts of each case. Mot. at 14–15.

11

However, "[q]ualified immunity . . . is a defense available only to government officials sued in their individual capacities. It is *not* available to those sued only in their official capacities." *Cmty. House, Inc. v. City of Boise, Idaho*, 623 F.3d 945, 965 (9th Cir. 2010) (emphasis in original). The Supreme Court defined the distinction between official capacity suits and personal capacity suits in *Kentucky v. Graham*:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself

473 U.S. 159, 165–66 (1985) (internal citations and quotation marks omitted).

The only allegation against Defendant Watson is that he was interim police chief of the Eureka Police Department when the Ordinance was enforced against Plaintiffs. FAC ¶ 9. The FAC names Defendant Watson only "[i]n his official capacity as Interim Chief of Police." *Id.* Therefore, because he is accused in his official capacity, the defense of qualified immunity is not available to him, and the Court DENIES Defendants' motion to dismiss Plaintiffs' claims against Defendant Watson.

//
//
//
//
//
//
//
//

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' motion to dismiss. The Court **SETS** a case management conference for March 5, 2019 at 2:00 p.m. The Court **DIRECTS** the parties to file on or before February 26, 2019 a joint case management statement including a proposed case schedule through trial.

**IT IS SO ORDERED.**

Dated: 2/21/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge

13